J-S01027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JACOB TYLER RUPERT | : | |
| | : | |
| Appellant | : | No. 415 WDA 2025 |

Appeal from the PCRA Order Entered April 4, 2025
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-CR-0000564-2022

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: March 24, 2026**

Jacob Tyler Rupert appeals from the order entered in the Court of Common Pleas of Armstrong County denying his Post-Conviction Relief Act ("PCRA")[1] petition. On appeal, Rupert raises various claims of ineffective assistance of trial counsel. After careful consideration, we affirm.

On April 11, 2022, eleven-month-old K.C. ("Victim") sustained head, neck, and chest injuries while left in Rupert's exclusive care. Although Rupert was not Victim's parent, he and Victim's mother were in a relationship at the time, and he cared for Victim on occasion. Rupert was subsequently charged

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

with aggravated assault, endangering welfare of children, simple assault, and harassment.[2]

A two-day jury trial commenced on July 11, 2023, at which Rupert was represented by James P. Spriestersbach, Esq. ("trial counsel") of the Westmoreland County Public Defender's Office. The Commonwealth presented the testimony of eleven witnesses, including that of Adelaide Eichman, M.D., a pediatrician at the University of Pittsburgh Medical Center ("UPMC") Children's Hospital and Child Advocacy Center, who was certified as an expert in the field of pediatric medicine and child abuse. Dr. Eichman testified that she was working as a consult physician on the date in question and examined Victim when she presented to the emergency room with injuries that raised suspicions of child abuse. Dr. Eichman further testified that after conducting a physical examination and reviewing Victim's x-rays, radiology and ophthalmology reports, and CT scan, she determined that Victim had sustained, *inter alia*, a skull fracture, neck fractures, facial abrasions, and retinal hemorrhaging, which led her to conclude that Victim's injuries were the result of abuse and had been sustained "shortly before 911 was called[.]" N.T. Trial, 7/12/23, at 317. At the conclusion of trial, Rupert was convicted of aggravated assault, endangering welfare of children, and simple assault. On November 7, 2023, Rupert was sentenced to 96 to 192 months' incarceration.

---

[2] 18 Pa.C.S.A. §§ 2702(a)(9), 4304(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

A review of the docket entries from the Court of Common Pleas of Armstrong County, Criminal Division, at CP-03-CR-0000564-2022, indicates that no direct appeal was filed.

Rupert retained Joseph E, Hudak, Esq. ("PCRA counsel") to represent him in post-trial proceedings. On November 7, 2024, PCRA counsel filed a PCRA petition on Rupert's behalf, in which he requested a new trial and raised claims of ineffective assistance of trial counsel and after-discovered evidence. On March 3, 2025, PCRA counsel filed an amended PCRA petition on Rupert's behalf in which he raised specific claims of trial counsel's ineffectiveness. **See** Amended PCRA Petition, 3/3/25, at ¶ 11. The PCRA court held an evidentiary hearing on March 4, 2025, at which both Rupert and trial counsel testified. Following the hearing and upon consideration of the supplemental briefings filed by parties, the court denied Rupert's petition on April 4, 2025. Rupert timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).[3] On May 5, 2025, the PCRA court issued its opinion, pursuant to Pa.R.A.P. 1925(a), in which it referred this Court to its April 3, 2025 memorandum that accompanied its order denying Rupert's petition.

---

[3] We note that Rupert's concise statement fails to conform with the requirements set forth in Rule 1925(b)(4)(iv) and is instead styled as a brief. Although Rupert's issues were not raised in accordance with this provision and thus are subject to waiver, **see** Pa.R.A.P. 1925(b)(4)(vii), we decline to find Rupert's issues waived on this basis because our ability to identify the issues he intended to raise on appeal is not hampered.

On appeal, Rupert presents the following questions for our review:

1. Was prejudice under [**Strickland v. Washington**, 466 U.S. 668 (1984)] and [**Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987) self-evident as in **Commonwealth v. Perry**, [644 A.2d 705 (Pa. 1994)] where in preparation for a felony trial, trial counsel met with [Rupert] for only 45 minutes the Friday before jury selection, failed to consider [Rupert's] theory of the case, failed to obtain a defense expert, failed to properly advise [Rupert] as to taking the witness stand in his own defense, and failed to consider presentation of [Rupert's] seven character witnesses?

2. Under the facts of this case, was there constitutionally defective assistance of counsel in violation of [Rupert's] rights under U.S. Const, amend. VI, and Pa. Const, art. I, § 9, under **Pierce**, *supra*, and **Commonwealth v. Kimball**[, 724 A.2d 326 (Pa. 1999)]?

Appellant's Brief, at 3 (footnotes and PCRA court answers omitted).

Our scope and standard of review pertaining to the denial of a PCRA petition is well-settled:

We consider the record in the light most favorable to the prevailing party at the PCRA level. This review is limited to the evidence of record and the factual findings of the PCRA court. We afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. Accordingly, as long as the PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its ruling. Nonetheless, where the issue pertains to a question of law, our standard of review is de novo and our scope of review is plenary.

**Commonwealth v. Pointer**, 348 A.3d 1216, 1227 (Pa. Super. 2025) (citation omitted).

Rupert contends that he is entitled to PCRA relief based upon the ineffective assistance of trial counsel. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed

- 4 -

ineffective upon a sufficient showing by the petitioner." ***Commonwealth v. Robinson***, 278 A.3d 336, 340 (Pa. Super. 2022) (citation omitted).

> To establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. [***See Strickland***, 466 U.S. at 687; ***Pierce***, 527 A.2d at 975-76.]

***Pointer***, 348 A.3d at 1227 (citation omitted). "A petitioner's failure to satisfy any prong of the ineffectiveness test is fatal to the claim." ***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citation omitted). Moreover, "[w]e need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." ***Commonwealth v. Evans***, 303 A.3d 175, 182 (Pa. Super. 2023) (citation omitted).

The first consideration is whether the underlying claim of ineffectiveness is of arguable merit. "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Id.*** (citation omitted).

> With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, the court must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, a finding that a

chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

***Commonwealth v. Hopkins***, 231 A.3d 855, 874 (Pa. Super. 2020) (quotation marks, brackets, and citations omitted). "A finding of prejudice requires the petitioner to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Robinson***, 278 A.3d at 340-41 (internal quotation marks and citation omitted).

Rupert contends that trial counsel rendered ineffective assistance by failing to prepare for trial, as counsel's preparation with Rupert was limited to a period of "45 minutes the Friday before jury selection." Appellant's Brief, at 23. Rupert further avers that trial counsel failed to: (1) "consider [Rupert's] theory of the case[;]" (2) "obtain a defense expert[;]" (3) "properly advise [Rupert] as to taking the witness stand in his own defense[;]" and (4) "consider presentation of [Rupert's] seven character witnesses[.]" ***Id.*** Rupert claims that the PCRA court erred by misconstruing "each of these constitutional deficiencies" as "alternative trial strategy[,]" and relies on ***Perry***, 644 A.2d at 709, for the proposition that counsel's "[f]ailure to prepare is not an example of forgoing one possible avenue to pursue another approach; it is simply an abdication of the minimum performance required of defense counsel." Appellant's Brief, at 23-24.

In his first issue, Rupert seems to suggest that to prevail on his ineffectiveness claims, he is not required to prove prejudice because the prejudice against him is "self-evident." *Id.* at 21. We disagree.

The United States Supreme Court has recognized the applicability of the doctrine of prejudice *per se* where an ineffectiveness claim presents "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *U.S. v. Cronic*, 466 U.S. 648, 658 (1984) (footnote omitted). Thus, "in the very rare case, prejudice is presumed without inquiry into counsel's actual performance[.]" *Commonwealth v. Pacheco*, 340 A.3d 1038, 1042 (Pa. Super. 2025) (internal quotation marks, citation, and footnote omitted).

> The [*Cronic*] Court identified three situations when a presumption of prejudice would be appropriate: (1) when there is a complete denial of counsel; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; or (3) when the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance.

*Commonwealth v. Drayton*, 313 A.3d 954, 960-61 (Pa. 2024) (citing *Cronic*, U.S. at 659, 661) (quotation marks and brackets omitted). The Pennsylvania Supreme Court "has been reticent to expand the presumption of prejudice beyond those circumstances identified in *Cronic*[,]" and has stated that it "should only apply in very limited circumstances, *i.e.*, when there has been an actual or constructive denial of counsel." *Id.* at 966, 967 (citations omitted).

> The defining feature of **Cronic** ineffectiveness cases is that the acts or omissions of counsel were the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame.

**Pacheco**, 340 A.3d at 1042 (citations omitted).

Rupert has not demonstrated that the circumstances presented in this case warrant application of the presumption of prejudice. In his brief, Rupert has not even attempted to explain how trial counsel's representation constituted a complete denial of counsel. **See** Appellant's Brief, at 22-23; **Drayton**, 313 A.3d at 966. Rather, without any citation to legal authority, Rupert summarily concludes that counsel abdicated his duty to prepare for trial, rendering prejudice self-evident. **See** Appellant's Brief, at 23-24; Pa.R.A.P. 2119(a) (requiring the argument advanced in an appellate brief to contain discussion of and citation to pertinent legal authorities); **Commonwealth v. Martz**, 232 A.3d 801, 809 (Pa. Super. 2020) ("This Court will not become the counsel for an appellant and develop arguments on an appellant's behalf[.] Waiver of an issue results when an appellant fails develop an issue properly or cite to legal authority to support his contention in his appellate brief.") (citations omitted). Therefore, because Rupert has failed to develop his argument to demonstrate that the **Cronic** framework is applicable, we will review Rupert's ineffectiveness claims under the traditional three-pronged ineffectiveness analysis.

In his second issue, Rupert argues that there was no reasonable strategic basis for the failure of trial counsel to prepare for trial and present an alternative factual theory of the case to the jury concerning the cause of Victim's injuries. Instead, trial counsel proceeded on a theory that the Commonwealth could not satisfy its burden of proof with respect to the cause of Victim's injuries. The foundation of Rupert's argument is that based upon the evidence that the Commonwealth was able to present at trial, it was foolish and unwise to rely on a contention that the Commonwealth was not able to prove, beyond a reasonable doubt, the cause of the Victim's injuries. Specifically, Rupert asserts that "trial counsel failed to understand that with [Dr. Eichman's] finding of abuse and [Rupert] being the only person present when [Victim] went limp, it was not plausible to proceed on a theory that [Victim's] injuries simply happened[,]" which was "tantamount to presenting no defense at all." Appellant's Brief, at 26 (internal quotation marks omitted). Rupert further contends that in light of this, "it was irrational to disregard [Rupert's] theory that [Victim's mother] had journeyed to Virginia to bring [Rupert] back to Pennsylvania to make him a scapegoat." *Id.* Rupert concludes that based on the foregoing, he has demonstrated all three prongs of the ineffectiveness test with respect to this claim. *See id.* We disagree.

Rupert has failed to establish that counsel lacked a reasonable basis for proceeding on a theory that the Commonwealth could not establish the element of causation. "A petitioner is not entitled to relief because counsel's

trial strategy was unsuccessful; when the course chosen was reasonable, counsel cannot be faulted for failing to pursue a different path." *Commonwealth v. Solano*, 129 A.3d 1156, 1166-67 (Pa. 2015) (citation omitted). Following an evidentiary hearing, the PCRA court rejected this contention as follows:

> [Trial counsel] met with [Rupert] in person for approximately 45 minutes at the Westmoreland County Prison the Friday before jury selection. During this meeting, trial counsel discussed with [Rupert] two different plea offers, which [Rupert] ultimately rejected, as well as possibilities for trial. Trial counsel further explained to [Rupert] that the Commonwealth had the burden to prove [Rupert's] guilt beyond a reasonable doubt and that [Rupert] did not have to prove anything.

> [Rupert] testified that he discussed with trial counsel his theory that [Victim's mother] lured [him] back to Pennsylvania to use him as a scapegoat for [Victim's] injuries. [Trial counsel] denies being made aware of this theory. [Trial counsel] understood [Rupert] to be home alone with [Victim] and was made aware by [Rupert] that [he] did not cause the injuries. Furthermore, trial counsel testified that [Rupert] never provided him with a witness that would testify that [Victim's mother] was abusing [Victim].

> There's no dispute that [Victim's mother] traveled to Virginia where [Rupert] was residing and returned to Pennsylvania with [him]. However, [trial counsel] explained that her purported reasoning for doing so was that [Rupert] was having suicidal thoughts. [Rupert] adamantly denies being suicidal or ever having suicidal thoughts or tendencies.

> [Trial counsel] was aware that [Rupert] believed [Victim's mother's] purported reasoning for visiting Virginia to be fabricated. That being said, trial counsel was concerned that the Commonwealth would use any alleged history of suicidal thoughts or tendencies against [Rupert] in front of the jury. As such, [trial counsel] testified that he and the assistant district attorney made an agreement to keep this evidence out of trial. The court finds this to be a reasonable trial strategy.

- 10 -

* * *

[Trial counsel] further testified that he always prepares for trial and that anything [Rupert] gave him he looked into and made a decision as to whether it could or should be admissible. He stated that he reviewed and received medical records of the injuries. Furthermore, he ordered the transcript from the preliminary hearing to review and prepare for cross-examination and impeachment purposes. Additionally, he spoke with [Rupert's] coworker or employer who gave trial counsel discovery materials that were later admitted into evidence for impeachment purposes of [Victim's mother]. [Trial counsel] clarified that these messages did not support the assertion that [Victim's mother] caused the injuries or that she lured [Rupert] to Pennsylvania to serve as a scapegoat.

The court finds that [trial counsel] investigated and prepared for trial. Furthermore, the Commonwealth had the burden to prove [Rupert] was guilty beyond a reasonable doubt. It is a reasonable trial strategy for [trial counsel] to focus on a working theory that the Commonwealth cannot meet its burden when causation is a main issue.

Additionally, trial counsel is not ineffective for failing to present the alternative theory that [Victim's mother] caused the injuries and lured [Rupert] back to Pennsylvania to serve as her scapegoat. There is dispute as to whether [trial counsel] was aware of this theory. However, the court finds that [Rupert] has not proven that this alternative theory offered a higher potential for success. Trial counsel was not provided with any evidence or witness that would have supported this alternative theory. [Rupert] alluded to evidence existing that could support his theory that [Victim's mother] lied about her purpose in traveling to Virginia, but nothing to support that [Victim's mother] was the one who caused [Victim's] injuries.

PCRA Court Memorandum, 4/4/25, at 6-7 (unnecessary capitalization omitted).

At the evidentiary hearing, the PCRA court heard testimony from both trial counsel and Rupert. **See** N.T. PCRA Hearing, 3/4/25, at 5-40; 40-62.

- 11 -

Although the court heard conflicting testimony concerning this ineffectiveness claim, it nonetheless determined that trial counsel's testimony was credible, and we defer to the PCRA court's credibility determinations. *See Pointer*, 348 A.3d at 1227. Based on the foregoing and in our review of the record, we discern no error or abuse of discretion by the PCRA court in determining that counsel's actions were reasonable under the circumstances. Accordingly, because Rupert has failed to satisfy the reasonable basis prong of the ineffectiveness analysis, this claim fails.

Second, Rupert avers that trial counsel was ineffective for failing to obtain an expert witness to attempt to rebut the testimony offered by Dr. Eichman. Rupert contends that because Dr. Eichman had already determined and would testify that Victim's injuries were the result of abuse, "it was inevitable that [this] determination would be accepted by the jury" if the defense did not present its own expert witness to rebut this testimony. Appellant's Brief, at 27. Rupert asserts that the defense "had nothing to lose by seeking a second opinion," and that if the second opinion contradicted or found inconclusive the testimony offered by Dr. Eichman, "there was a potential for acquittal." *Id.* Accordingly, Rupert concludes that he has satisfied all three prongs of the ineffectiveness test. We disagree.

> The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony.

- 12 -

Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (internal quotation marks, citations, and brackets omitted).

Rupert has failed to establish that trial counsel was ineffective for failing to obtain an expert rebuttal witness. The Commonwealth astutely notes that Rupert's argument "presupposes that there was an expert witness who was available, who would not have come to the same conclusion as Dr. Eichman did, who was willing to testify for the defense, and that their testimony would have been favorable for the defense to the point it would have changed the outcome of the trial." Appellee's Brief, at 13. Rupert has not shown that an expert witness was available who would have offered testimony designed to advance his cause. *See Chimel*, 30 A.3d at 1143. Furthermore, trial counsel cross-examined Dr. Eichman regarding her expert qualifications as well as the substance of her testimony, findings, and conclusions. *See* N.T. Trial, 7/12/23, at 281-283; 320-334.

Moreover, at the PCRA hearing, trial counsel confirmed that he had a strategic basis for not obtaining an independent medical expert and specifically relayed his concern that an "independent expert might come to the same conclusion as the Commonwealth's expert," in which case the defense would then "be faced with two experts ... arriving at the same conclusion[,]" thereby placing Rupert in an even less favorable position. N.T.

PCRA Hearing, 3/4/25, at 13. Trial counsel testified that he thought the Commonwealth could prove that Victim's injuries amounted to an aggravated assault, however, the defense theory was that they could not successfully prove that Rupert was the one who inflicted the injuries. *Id*. at 16. Trial counsel advised Rupert that the Commonwealth could place him in "proximity to the child" but they could not prove that he committed the assault which led to Victim's injuries. *Id*. at 19-20. Based on counsel's testimony, the PCRA court explained its findings as follows:

> The court does not find trial counsel ineffective as he had a reasonable basis for his inaction. [Trial counsel] reiterated several times throughout the evidentiary hearing that his working theory was that the Commonwealth could not prove that [Rupert] caused [Victim's] injuries. He didn't doubt that the Commonwealth could prove injuries existed. Instead of risking an independent expert coming to the same conclusion as the Commonwealth's, he decided to focus on cross-examining the medical expert to support his assertion that she could not prove that [Rupert] was the person who inflicted the injuries.

PCRA Court Memorandum, 4/4/25, at 10 (unnecessary capitalization omitted). We discern no error or abuse of discretion by the PCRA court in determining that trial counsel's basis was reasonable. Accordingly, this ineffectiveness claim likewise fails.

Third, Rupert avers that trial counsel was ineffective for failing to advise him of his right to testify in his own defense. *See* Appellant's Brief, at 28. However, Rupert raises this claim for the first time in his appellate brief, and as such, it is waived for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised

in the trial court are waived and cannot be raised for the first time on appeal.").

Fourth, Rupert claims that trial counsel was ineffective for failing to present the testimony of seven character witnesses, as "counsel essentially thought that character witnesses were not important." Appellant's Brief, at 28. We disagree.

> In establishing whether defense counsel was ineffective for failing to call witnesses, an appellant must prove: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Alceus**, 315 A.3d 853, 860 (Pa. Super. 2024) (brackets and citation omitted). For a claim that trial counsel's failure to call a character witness to have arguable merit, the petitioner must present the testimony of the proposed character witness at the PCRA hearing to testify to his availability and willingness to serve as a character witness. **See Commonwealth v. Hollabaugh**, 346 A.3d 794, 800-01 (Pa. Super. 2025).

In the argument section of his brief, Rupert fails to address the above five factors or offer any meaningful argument to support his claim. **See** Appellant's Brief, at 28-29; **Alceus**, 315 A.3d at 860. Furthermore, Rupert's claim lacks arguable merit because he failed to present the testimony of any proposed character witness at his PCRA hearing. **See Hollabaugh**, 346 A.3d

at 800-01. Accordingly, Rupert has failed to establish that counsel was ineffective for failing to call his purported character witnesses.

Moreover, the PCRA court adequately explained its findings concerning this ineffectiveness claim as follows:

> [Rupert] testified that he wanted to call seven character witnesses. He indicated that he provided trial counsel with their names, addresses, and phone numbers. [Rupert] stated that [trial counsel] rejected his request, relaying to him that this trial wasn't about his character and that he did not have subpoena power.
>
> [Trial counsel] testified that he did not believe this case required the inclusion of character witnesses. ... [C]ounsel further testified that he informed [Rupert] of [Rupert's] subpoena power and that [Rupert] never asked him to subpoena witnesses. Additionally, he does not recall [Rupert] asking him to look into potential character witnesses.
>
> [Trial counsel] further testified that he believed that [Victim's mother] would expose herself upon cross-examination; therefore, he did not focus on potential witnesses to contradict [her] credibility.
>
> Furthermore, [trial counsel] reviewed [Rupert's] criminal history prior to trial. Under the Pennsylvania Rules of Evidence 404(a)(2)(A): "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Had there been witnesses to testify regarding [Rupert's] truthfulness, peacefulness, or law-abiding character, trial counsel was aware that this could open the door for the Commonwealth to potentially present [Rupert's] prior convictions before the jury.
>
> [Rupert] admitted that he would not have wanted the jury to know about his criminal history, which includes convictions for theft and conspiracy to commit simple assault. However, he clarified that he would still choose to present his character witnesses and tell his side of the story.
>
> The court does not find [trial counsel] ineffective for failing to call witnesses. Due to the conflicting testimony regarding the

- 16 -

discussion of witnesses and subpoena power, it is not clear to the court whether [trial counsel] knew that the witnesses existed or whether the witnesses were willing or available to testify. Regardless of the disputed facts, [Rupert] has failed to prove that the absence of the witnesses' testimony has prejudiced him. To the contrary, the record reflects that introducing character evidence had a higher potential risk than reward. The court finds it reasonable for trial counsel to avoid the possibility of the Commonwealth presenting to the jury [Rupert's] past criminal history, especially when trial counsel does not believe character witnesses would serve any benefit to [Rupert].

PCRA Court Memorandum, 4/4/25, at 5-6 (unnecessary capitalization omitted).

Finally, Rupert avers that even if this Court concludes his individual ineffectiveness claims fail, he is nonetheless entitled to a new trial based on the cumulative prejudicial effect of trial counsel's errors. We disagree.

It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Accordingly, where ineffectiveness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed.

*Commonwealth v. Smith*, 181 A.3d 1168, 1187 (Pa. Super. 2018) (citations and quotation marks omitted).

Rupert waived this issue by failing to set forth a cogent, corresponding argument in his brief to support this claim. *See* Pa.R.A.P. 2119(a); *Martz*, 232 A.3d at 809. Furthermore, Rupert's individual claims regarding the character witnesses and expert testimony were not denied due to lack of prejudice, but rather on the credibility findings of the PCRA court in accepting

- 17 -

trial counsel's testimony as credible and supportive of counsel's trial strategy. Therefore, there is no basis for an accumulation claim. **See Smith**, 181 A.3d at 1187. Accordingly, Rupert's cumulative error claim likewise fails.

For the foregoing reasons, Rupert's claims of ineffective assistance of counsel fail, and he is not entitled to his requested relief. Accordingly, we affirm the PCRA court order denying Rupert's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/24/2026